# In the United States Court of Appeals For the Seventh Circuit

In re: Lion Air Flight JT 610 Crash

LAURA SMITH, as duly appointed representative and Independent Administrator of the ESTATE OF ANDREW MANFREDI, deceased, *et al.*,

*Plaintiffs-Appellants,*

v.

THE BOEING COMPANY, *et al.*,

*Defendants-Appellees.*

TERRENCE BUEHLER, Personal Representative and Independent Administrator of the ESTATE OF LIU CHANDRA, deceased, *et al.*,

*Plaintiffs-Appellants,*

v.

THE BOEING COMPANY, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Northern District of Illinois, Hon. Thomas M. Durkin, Presiding
(Consolidated Case Nos. 18-cv-07686, 19-cv-01552, & 19-cv-07091)

**BRIEF OF AMERICAN ASSOCIATION FOR JUSTICE AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

SEAN DOMNICK
*President*
JEFFREY R. WHITE
*Counsel of Record*
AMERICAN ASSOCIATION FOR JUSTICE
777 6th Street NW, #200
Washington, DC 20001
(202) 617-5620
jeffrey.white@justice.org

KEVIN MAHONEY
KREINDLER & KREINDLER LLP
485 Lexington Ave.
New York, NY 10017
(212) 687-8181
kmahoney@kreindler.com

*Counsel for Amicus Curiae
American Association for Justice*

August 28, 2023

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus curiae American Association for Justice certifies that it is a non-profit organization. It has no parent corporation or publicly owned corporation that owns 10% or more of its stock.

Respectfully submitted this 28th day of August 2023.

/s/ Jeffrey White
_____

JEFFREY R. WHITE
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................................ ii

TABLE OF CONTENTS ...................................................................................................... iii

TABLE OF AUTHORITIES ................................................................................................. iv

IDENTITY AND INTEREST OF AMICUS CURIAE ........................................................1

SUMMARY OF ARGUMENT .............................................................................................1

ARGUMENT .........................................................................................................................2

I.    THE SEVENTH AMENDMENT PRESERVES APPELLANTS' RIGHT TO TRY
      HER CLAIMS TO A JURY "INVIOLATE." .............................................................4

      A.  The History of the Seventh Amendment ...................................................................4

      B.  How Courts Interpret the Seventh Amendment. .........................................................6

      C.  Appellants Have a Seventh Amendment Right to a Jury Trial. ...................................7

II.   CONGRESS CANNOT SWEEP ALL HIGH SEAS DEATH CLAIMS INTO
      ADMIRALTY WITHOUT VIOLATING THE SEVENTH AMENDMENT. ..........10

III.  THE COURT CAN AVOID THE CONSTITUTIONAL QUESTION BY
      INTERPRETING DOHSA TO PROVIDE PERMISSIVE, NOT MANDATORY,
      ADMIRALTY JURISDICTION. ...............................................................................12

CONCLUSION ...................................................................................................................14

CERTIFICATE OF COMPLIANCE ...................................................................................15

CERTIFICATE OF SERVICE ............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Atlantic & Gulf Stevedores, Inc.*, 369 U.S. 355 (1962)...............................................14

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977) ............7

*Crowell v. Benson*, 285 U.S. 22 (1932)...................................................................7

*Curtis v. Loether*, 415 U.S. 189 (1974).........................................................3, 6, 7

*DeLovio v. Boit*, 7 F. Cas. 418 (C.C.D. Mass. 1815)....................................................8

*Dennick v. R.R. Co.*, 103 U.S. 11 (1880)..............................................................9

*Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064 (S.D.N.Y. 1988) .......................13

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) .................................................6

*Grayson v. Wickes Corp.*, 607 F.2d 1194 (7th Cir. 1979)............................................6, 7

*Guidry v. Durkin*, 834 F.2d 1465 (9th Cir. 1987) .....................................................12

*Int'l Fin. Servs. Corp.*, 356 F.3d 731 (7th Cir. 2004) ...............................................13

*Le Caux v. Eden* (1781) 99 Eng. Rep. 375 (KB) ......................................................7, 8

*Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661 (7th Cir. 1996)............................................6

*Lindo v. Rodney and Another* (1782) 99 Eng. Rep. 385 (KB) ............................................8

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643 (7th Cir. 2002)6, 9

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986) .....................................3, 13

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)...................................................4

*Parsons v. Bedford*, 28 U.S. 433 (1830) ............................................................10

*Percival v Hickey*, 18 Johns. 257 (N.Y. Sup. Ct. 1820)...............................................9

*Rogers v. Loether*, 467 F.2d 1110 (7th Cir. 1972).........................................10, 12, 13

*Ross v. Bernhard*, 396 U.S. 531 (1970) .............................................................9

*South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 56 F. Supp. 2d 104 (D. Me. 1999) .................11

*Tull v. United States*, 481 U.S. 412 (1987)........................................................6, 9

*United States v. Boeing Co.*, No. 4:21-cr-5-O, 2023 WL 5183058 (N.D. Tex. Feb. 9, 2023)......11

*United States v. ERR, LLC*, 35 F.4th 405 (5th Cir. 2022) ............................................5

*United States v. One 1976 Mercedes Benz 280S*, 618 F.2d 453 (7th Cir. 1980).........................10

iv

*United States v. Turkette*, 452 U.S. 576 (1981) ...................................................................13

*United States v. UCB, Inc.*, 970 F.3d 835 (7th Cir. 2020) ....................................................12

*Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93 (1991).................................7

**Statutes**

28 U.S.C. § 1332......................................................................................................................3

28 U.S.C. § 1333......................................................................................................................3

28 U.S.C. § 1441....................................................................................................................13

Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.....................................................11

Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301–08 (2006).......................3, 12

**Other Authorities**

Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639 (1973) ...................................................................................................................5

Fed. R. Civ. P. 38..............................................................................................................4, 14

Fed. R. Civ. P. 9......................................................................................................................4

Hon. William G. Young, *An Open Letter to U.S. District Judges*, 50 FED. LAW. 30 (July 2003)..................................................................................................................................10

Jeffrey Robert White, *The Civil Jury: 200 Years Under Siege*, 36(6) TRIAL 22 (June 2000).........5

Matthew P. Harrington, *The Economic Origins of the Seventh Amendment*, 87 IOWA L. REV. 145 (Oct. 2001) .................................................................................................................4

Matthew P. Harrington, *The Legacy of the Colonial Vice-Admiralty Courts (Part II)*, 27 J. MAR. L. & COM. 323 (1996) ..........................................................................................4

Rebecca Hollander-Blumoff, *The Psychology of Procedural Justice in the Federal Courts*, 63 HASTINGS L. J. 127 (2011) .............................................................................................10

*See* Angela M. Jones et al., *Perspective Differences in Trial Process: A Comparison of Judges, Juries and Litigants*, 26(1) PSYCHIATRY, PSYCH. & L. 87 (2019) .............................10

THE DECLARATION OF INDEPENDENCE (U.S. 1776) ......................................................................4

Theodore M. Cooperstein, *Letters of Marque and Reprisal: The Constitutional Law and Practice of Privateering*, 40 J. MAR. L. & COM. 221 (2009)....................................................7

U.S. CONST. amend. VII................................................................................................5, 6, 14

U.S. CONST. art III, § 2, cl. 3 ...................................................................................................5

## IDENTITY AND INTEREST OF AMICUS CURIAE

The American Association for Justice (AAJ) is a national, voluntary bar association established in 1946 to strengthen the civil justice system, preserve the right to trial by jury, and protect access to the courts for those who have been wrongfully injured. With members in the United States, Canada, and abroad, AAJ is the world's largest plaintiff trial bar. AAJ members primarily represent plaintiffs in personal injury actions, employment rights cases, consumer cases, and other civil actions. For more than 75 years, AAJ has served as a leading advocate for the right of all Americans to seek legal recourse for wrongful injury.

AAJ believes that the district court's interpretation of the Death on the High Seas Act, if affirmed, will deny Appellants and future victims of high seas fatal accidents their Seventh Amendment right to trial by jury, the cornerstone of our civil justice system.[1]

## SUMMARY OF ARGUMENT

On October 29, 2018, Lion Air Flight JT 610, a Boeing 737 Max airplane, crashed on the "high seas" eighteen miles off the coast of Indonesia, in the Java Sea. Less than five months later, Ethiopian Airlines flight 302, a Boeing 737 Max airplane, crashed in Ethiopia. Survivors of the 346 victims of both crashes later sued Appellee, the Boeing Company, in the Northern District of Illinois, asserting that defects in the design of the 737 Max's Maneuvering Characteristics Augmentation System caused the crashes. Yet only the victims of the crash in Ethiopia can make their case to a jury. That is because the district court held that the Death on the High Seas Act ("DOHSA") governs the Lion Air cases and sweeps all claims into the admiralty side of federal courts, where there is no right to a jury trial.

---

[1] No party or party's counsel authored this brief in whole or in part. No person, other than amicus curiae, its members, and its counsel, contributed money that was intended to fund the preparation or submission of this brief.

The district court's interpretation of DOHSA violates Appellants' Seventh Amendment rights. Like today, common law and admiralty courts in 1791 England had concurrent jurisdiction over the overwhelming majority of high seas tort claims. If brought in common law courts, those claims could be heard by juries. Because the Seventh Amendment "preserves" the common law jury right as of 1791, Congress cannot force all high seas wrongful death claims into the admiralty side of federal courts, where no jury right exists.

This Court, however, can avoid the constitutional dilemma the district court's statutory interpretation creates. Appellants have an independent basis for federal jurisdiction and should be able to proceed "at law" on that basis. DOHSA's language does not prevent this. The district court's interpretation of the statute requiring all federal DOHSA cases to proceed "in admiralty" is incorrect. DOHSA, without dispute, permits actions under the statute in state courts, which are forbidden from exercising admiralty jurisdiction. Congress did not pass DOHSA to create a distinct form of maritime claim that can be heard "at law" before state court juries but only "in admiralty" before federal judges.

The Boeing 737 Max disputes illustrate the incongruity resulting from the district court's decision. The availability of a constitutional right in these essentially identical proceedings should not turn on whether a person died in the Java Sea or in Ethiopia. DOHSA does not, and cannot, require all claims to proceed "in admiralty," particularly when federal courts have an independent basis for subject matter jurisdiction.

This Court should reverse the district court's decision and preserve Appellants' Seventh Amendment rights.

## ARGUMENT

This case presents a statutory question and a constitutional question. The statutory question is whether the two words "in admiralty" require all Death on the High Seas Act ("DOHSA"), 46

U.S.C. §§ 30301–08 (2006), claims to proceed on the admiralty side of federal courts, even when there is an independent basis for the court's subject matter jurisdiction, such as diversity. 28 U.S.C. § 1332. The answer is: no. State and federal courts have concurrent jurisdiction over DOHSA claims under the statute. *See* 46 U.S.C. § 30308(a); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232 (1986). Because state courts cannot exercise admiralty jurisdiction, DOHSA must permit plaintiffs to proceed in law courts. 28 U.S.C. § 1333(1). There is no sound reason why Congress would permit DOHSA in state courts but arbitrarily forbid them on the law side of federal district courts.

The primary focus of this brief is the constitutional question: whether there is a Seventh Amendment right to trial by jury in DOHSA cases. If the Court holds that DOHSA does not forbid plaintiffs from proceeding "at law," then the Seventh Amendment answer is simple. A statutory cause of action "requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974).

If the Court agrees with the district court that DOHSA forces all federal actions under the statute into admiralty, however, the Court must then confront that ruling's unavoidable constitutional implications. Because there is ample historical evidence that a high seas injury case could be brought in common law courts in 1791, the Seventh Amendment forbids DOHSA from requiring Appellants to proceed "in admiralty," where there is no right to trial by jury. This is especially the case in an aviation dispute that has nothing to do with maritime issues.

The Court does not have to reach this question here, however. It should avoid the constitutional issue altogether and read "in admiralty" in DOHSA as permissive, not mandatory. Because Appellants have an independent basis for jurisdiction for their wrongful death claims,

they can proceed "at law," where the Seventh Amendment preserves their right to trial by jury, "inviolate." Fed. R. Civ. P. 38(a).

## I.   THE SEVENTH AMENDMENT PRESERVES APPELLANTS' RIGHT TO TRY HER CLAIMS TO A JURY "INVIOLATE."

When a DOHSA plaintiff has an independent basis for federal jurisdiction over her claims, unless she makes a Rule 9(h) designation to proceed "in admiralty," her DOHSA claims proceed "at law" and she has an "inviolate" Seventh Amendment right to a jury trial. Fed. R. Civ. P. 9(h)(1); Fed. R. Civ. P. 38(a).

### A.   The History of the Seventh Amendment.

Since the founding of our country, the right to trial by jury has been sacrosanct. In our Declaration of Independence, we took issue with the King's "[d]epriving us in many cases, of the benefits of trial by jury." THE DECLARATION OF INDEPENDENCE, para. 19 (U.S. 1776). That revolutionary grievance is relevant to the constitutional issues at stake here. It arose from England's intentional expansion of the jurisdiction of colonial vice-admiralty courts to deprive colonists of the right to a jury.[2] *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 340 (1979) (Rehnquist, J., dissenting) ("The extensive use of vice-admiralty courts by colonial administrators to eliminate the colonists' right of jury trial was listed among the specific offensive English acts denounced in the Declaration of Independence."); *see generally* Matthew P. Harrington, *The Economic Origins of the Seventh Amendment*, 87 IOWA L. REV. 145, 162–65 (Oct. 2001) ("Among the courts' most vociferous critics was John Adams, who frequently appeared before the Massachusetts vice-admiralty court, and who decried 'the Brand of Infamy, Degradation and

---

[2] The vice-admiralty courts were colonial extensions of the English High Court of Admiralty. *See generally* Matthew P. Harrington, *The Legacy of the Colonial Vice-Admiralty Courts (Part II)*, 27 J. MAR. L. & COM. 323 (1996).

Disgrace fixed upon every American' by the vice-admiralty's power to try trade cases without a jury.")

When our Constitution was initially written, however, the right to a jury in civil cases was conspicuously absent; it contained only an express right in *criminal* cases. *See United States v. ERR, LLC*, 35 F.4th 405, 409 (5th Cir. 2022) (quoting U.S. CONST. art III, § 2, cl. 3). This was not a drafting error. The right was the subject of an ongoing debate between Federalists and Anti-Federalists. *See generally* Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 MINN. L. REV. 639, 662–66 (1973). Federalists believed that the right would be difficult to apply in federal courts because the scope of its application was not uniform in the states. *Id.* at 666. Anti-Federalists believed juries were essential to correcting the imbalance of power between the citizens and a federal government that the people, given their recent experience with remote institutions of power, largely mistrusted. *Id.* at 669. Notably, to exploit this sentiment, the anti-federalists reminded citizens of the Crown's improper expansion of the jurisdiction of vice-admiralty courts before the Revolution. *Id.* at 670–71.

The anti-federalist's strategy worked. *See* Jeffrey Robert White, *The Civil Jury: 200 Years Under Siege*, 36(6) TRIAL 22 (June 2000) ("Growing public opposition to the perceived abolition of the civil jury threatened ratification of the entire Constitution. The federalists finally prevailed by promising that the first Congress would add a Bill of Rights."). Our right to a civil jury trial in "Suits at common law" was enshrined in the Seventh Amendment in 1791. Wolfram, *supra*, at 639. The Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. amend. VII.

**B. How Courts Interpret the Seventh Amendment.**

The two key phrases in the Seventh Amendment are "Suits at *common law*" and "shall be *preserved*." *Id.* (emphasis added). The Amendment "preserve[s]" the right to a jury in causes of action cognizable in English common law courts as of 1791, when the Seventh Amendment came into force. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). Nonetheless, the right is not frozen in time. A statutory claim, like a wrongful death action, still "requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis*, 415 U.S. at 194; *accord Grayson v. Wickes Corp.*, 607 F.2d 1194, 1196 (7th Cir. 1979) (describing the *Curtis* holding as "well settled").[3]

Courts use a two-factor balancing test in applying the Seventh Amendment. *Granfinanciera*, 492 U.S. at 42. Courts first "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull v. United States*, 481 U.S. 412, 417 (1987). They then turn to the "second and most critical" issue: the nature of the relief. *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 669 (7th Cir. 1996). The purpose of the test is to see if the plaintiff seeks "legal" relief available in English common law courts (e.g., money damages) rather than the unique remedies available in 1791 courts of equity (e.g., injunctions) or admiralty (e.g., *in rem* judgments).[4] *Granfinanciera,* 492 U.S. at 41–42; *accord Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 649 (7th Cir. 2002)

---

[3] Wrongful death actions did not exist in England until the passage of Lord Campbell's Act in 1846. *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 579 (1974). Strict products liability did not exist in England until 1987. Maimon Schwarzchild, *Class, National Character, and the Bar Reforms in Britain: Will There Always Be an England?*, 9 CONN. J. INT'L L. 186, 198 n.59 (1994).

[4] *In rem* suits are actions directly against an "offending vessel." *Leon v. Galceran*, 78 U.S. 185, 187 (1870). An *in rem* action against a valuable vessel can be a more effective means of redress than an *in personam* suit against a transient, or absent, defendant. *See* Thomas J. Schoenbaum, 2 ADMIRALTY & MAR. LAW § 21:4 (6th ed. 2022) ("The action *in rem* allows the arrest of the vessel even though the shipowner's only contact with the jurisdiction is the presence of the vessel.").

("[T]he inquiry is to determine whether a modern *legal* right has a sufficient analogy to a right enforced by common law courts in the eighteenth century. . . .").

### C. Appellants Have a Seventh Amendment Right to a Jury Trial.

The application of the Seventh Amendment test in this case is straightforward. First, this is a personal injury action, which "is of course a prototypical example of an action at law, to which the Seventh Amendment applies." *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991). Second, Appellants seek only money damages. *See Curtis*, 415 U.S. at 196 n.11 ("If the action is properly viewed as one for damages only, our conclusion that this is a legal claim obviously requires a jury trial on demand."). Third, Appellants wish to proceed on the law side of the district court, not the admiralty side. *Grayson*, 607 F.2d at 1196. This final fact tips the scale because "[o]n the common-law side of the federal courts, the aid of juries is not only deemed appropriate but is required by the Constitution itself." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 450 n.7 (1977) (quoting *Crowell v. Benson*, 285 U.S. 22, 51–52 (1932)).

Appellants have an absolute right to proceed on the law side in this case. That is because, in 1791, common law courts had concurrent jurisdiction over high seas injury cases, unless the dispute was a prize case.[5] The availability of a jury depended then, as it should today, on a plaintiff's choice of court. The availability of concurrent jurisdiction is explicit in the famous 1781 case of *Le Caux v. Eden* (1781) 99 Eng. Rep. 375 (KB). There, Le Caux, a second mate on the

---

[5] Prize cases refer to admiralty disputes regarding ships seized by privateers, who were authorized by "letters of marque" to seize vessels belonging to enemy states. Upon the seizure, the privateer would present his bounty to the High Court of Admiralty, which "determined the value of the prize, the validity of its capture, and the shares to be distributed between the privateer and the Crown." *See* Theodore M. Cooperstein, *Letters of Marque and Reprisal: The Constitutional Law and Practice of Privateering*, 40 J. MAR. L. & COM. 221, 222–24 (2009).

*Bee*, brought assault and false imprisonment claims against Eden. *Id.* at 376. Eden was the captain of the *Enterprize* who (wrongly) captured the *Bee* on the high seas as a prize, imprisoning Le Caux in the process. *Id.* at 375–76. Le Caux subsequently brought a common law action for money damages *in personam* against Eden. *Id.* at 376. The issue in the case was whether the common law courts had jurisdiction over the dispute. *Id.* at 375.

Le Caux's argument, which the opinion summarizes, is revealing. He asserted that, because "actions are, every day, brought, and supported, for trespasses and assaults at sea," Eden could only narrowly argue that the court lacked jurisdiction because the case involved the capture of the *Bee* as a prize. *Id.* at 377. In response, Eden did not contest Le Caux's observation about common law practice. *Id.* at 378. Indeed, he conceded that "perhaps, no direct case can be mentioned of an assessment of damages in the Admiralty Court, eo nomine, for the personal injury of imprisonment . . . ." *Id.* at 378. But Eden insisted that, because the question of his tort liability was so intertwined with the propriety of his capture of the *Bee* as prize, only the Court of Admiralty had authority to decide the claim. *Id.* The court agreed. It reasoned that although "taking a ship on the high seas, trespass would lie at common law," because the dispute involved a prize determination, it had to be heard in admiralty. *Id.* at 380.

*Le Caux* contains compelling evidence that common law courts could adjudicate high seas injuries claims, unless they were prize cases. In *Lindo v. Rodney and Another* (1782) 99 Eng. Rep. 385 (KB), Lord Mansfield, writing for a common law court, stated that "[a] thing being done upon the high sea, *don't exclude the jurisdiction of the Courts of Common Law* . . . ." *Id.* at 386 (emphasis added). And, in 1815, Justice Story observed that "the courts of common law . . . have usurped or acquired concurrent jurisdiction over *all causes*, *except of prize*, within the cognizance of the admiralty." *DeLovio v. Boit*, 7 F. Cas. 418, 426 (C.C.D. Mass. 1815) (emphasis added). *See also*

*Percival v Hickey*, 18 Johns. 257 (N.Y. Sup. Ct. 1820) ("To take away the jurisdiction of the common law court, it must be either a question of *prize*, or such a taking or act as gives the one party a right to compel the other to treat it as prize.") (alteration in original).[6]

The common law's concurrent jurisdiction over high seas tort cases (excluding prize matters) is consistent with the English doctrine of "transitory actions" in tort. Under that doctrine, injury suits could be brought at common law "wherever the cause of action really arose, if process might be served upon the defendant." *Dennick v. R.R. Co.*, 103 U.S. 11, 11 (1880). The principle of transitory actions is further support that common law courts could exercise jurisdiction over *in personam* admiralty claims as long as they did not involve issues of prize.

The core purpose of the Seventh Amendment test is to identify the remedy that the plaintiff seeks and ascertain whether such relief is analogous to damages obtainable in a common law court in 1791. *See Marseilles Hydro Power*, 299 F.3d at 649. For that reason, the Supreme Court cautions judges that they "need not rest [their] conclusion on what has been called an 'abstruse historical search' for the nearest 18th-century analog." *Tull*, 481 U.S. at 421 (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). Nevertheless, the import of the history of the limits of exclusive admiralty jurisdiction in eighteenth-century English courts is that the Seventh Amendment attaches to Appellants' claims, regardless of how a court interprets DOHSA.

_____

[6] The centuries-long history of English admiralty law is one of constant jurisdictional conflict between the common law courts and the inferior court of admiralty. True to that history, in eighteenth century England, the "jealous and distrustful" common law courts vigorously guarded their jurisdiction and reduced the courts of admiralty to "comparative impotence." Stanley Morrison, *The Remedial Powers of the Admiralty*, 43 YALE L. J. 1, 3 (1933). Consequently, common law judges' "general point of view was that nothing should be left to the admiralty of which the common-law courts could conveniently take cognizance." *Id.* Given this history, it is very unlikely that the 1791 admiralty court would obtain exclusive jurisdiction over anything historically analogous to aviation products liability, an area of such immense domestic importance.

## II. CONGRESS CANNOT SWEEP ALL HIGH SEAS DEATH CLAIMS INTO ADMIRALTY WITHOUT VIOLATING THE SEVENTH AMENDMENT.

When it interprets the Seventh Amendment, this Court emphasizes that "weight must be given to the time-honored tradition of American commitment to jury trial, extending back to the Continental Congress . . . ." *United States v. One 1976 Mercedes Benz 280S*, 618 F.2d 453 (7th Cir. 1980). AAJ fervently agrees. A fundamental part of our mission is to preserve the sacred right to a jury in civil cases and ensure that every attempted "'encroachment upon it [is] watched with great jealousy.'" *Rogers v. Loether*, 467 F.2d 1110, 1113 (7th Cir. 1972) (quoting *Parsons v. Bedford*, 28 U.S. 433, 446 (1830)). We believe that the facts of the present case underscore both the vital importance of the jury right to our remarkable civil justice system and the severe dangers that the district court's interpretation of DOHSA poses to that sacred right.

The jury right is critical to our system's fairness and transparency. Research shows that litigants value "fairness of process" over the outcomes of their cases because a fair process shows the tribunal "cares about the dignity and social standing of those who stand before it." Rebecca Hollander-Blumoff, *The Psychology of Procedural Justice in the Federal Courts*, 63 HASTINGS L. J. 127, 137–38 (2011). Juries are not valued because they ensure a certain verdict. Indeed, research consistently indicates judge and juries agree far more often than they disagree. *See* Angela M. Jones et al., *Perspective Differences in Trial Process: A Comparison of Judges, Juries and Litigants*, 26(1) PSYCHIATRY, PSYCH. & L. 87, 87–88 (2019) (summarizing studies comparing juror and judge agreement). Rather, juries guarantee "[t]he acceptability and moral authority of the justice provided in our courts[.]" Hon. William G. Young, *An Open Letter to U.S. District Judges*, 50 FED. LAW. 30 (July 2003).

Our civil justice system is particularly meaningful to the Lion Air 610 and Ethiopian Airlines 302 families because the criminal justice system has excluded them. After the two crashes,

the Department of Justice negotiated a deferred prosecution agreement with Boeing without conferring with the families, which a district court recently concluded violated the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. *United States v. Boeing Co.*, No. 4:21-cr-5-O, 2023 WL 5183058, at *3 (N.D. Tex. Feb. 9, 2023). However, the court also held there was no remedy for this violation. *See id.* at *16. ("[N]either the Speedy Trial Act nor this Court's inherent supervisory powers provide a means to remedy the incalculable harm that the victims' representatives have suffered."). Thankfully, through their civil claims, the families can be heard. The availability of the Seventh Amendment jury right in these vital proceedings should not turn, as it now does, on whether a victim's loved one died on the Java Sea or in Ethiopia.

Indeed, that disparity highlights the constitutional deficiencies of the district court's interpretation of DOHSA. The district court's decision forces *all* DOHSA cases in federal courts into admiralty, away from juries. Because high seas tort cases could be brought in common law courts in 1791, Congress cannot do this without permitting trial by jury. *Accord South Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 56 F. Supp. 2d 104, 112 (D. Me. 1999) ("Congress simply cannot extend either equity or admiralty jurisdiction into areas where the common law traditionally provided the remedy, without preserving the right to jury trial."). A principal reason the Seventh Amendment was included in the Bill of Rights in the first place was in response to England's improper broadening of the scope of admiralty jurisdiction. If this Court concludes that DOHSA's language requires this case to proceed "in admiralty," it must confront the fact that such a reading is not constitutional, particularly in a case involving aviation products liability.

Because claims historically analogous to Appellants' could be brought in common law courts, DOHSA cannot compel them to proceed in admiralty without violating the Seventh Amendment.

### III. THE COURT CAN AVOID THE CONSTITUTIONAL QUESTION BY INTERPRETING DOHSA TO PROVIDE PERMISSIVE, NOT MANDATORY, ADMIRALTY JURISDICTION.

The Court can avoid the constitutional question, however, by interpreting DOHSA's "in admiralty" language as permissive, not mandatory. 46 U.S.C. § 30302. Under the interpretative canon of constitutional avoidance, when a statute is subject to two plausible readings, one of which raises a "serious" constitutional doubt, "a court should choose the interpretation by which the [constitutional] question may be avoided." *United States v. UCB, Inc.*, 970 F.3d 835, 846 (7th Cir. 2020) (internal quotation marks omitted).

This Court exercised constitutional avoidance in a prior Seventh Amendment case, *Rogers*, 467 F.2d at 1111. There, the Court was faced with whether the Civil Rights Act of 1968 provided a jury right on the question of damages when the statute's language authorized "the court" to decide the issue. *Id.* The Court concluded that the statute was ambiguous as to whether "the court" included "the jury" and considered the doctrine of constitutional avoidance "as controlling in this case." *Id.* at 1124. This Court said: "we should place an interpretation on the statute which will avoid the constitutional issue. We therefore hold that it was error for the district court to refuse defendants' request for a jury trial." *Id.*

There is ample evidence that DOHSA permits actions "at law" in federal courts. If Congress wished to create mandatory admiralty jurisdiction in federal courts, it would not permit state courts to hear DOHSA cases. Allowing for state court jurisdiction over DOHSA cases defeats the very purpose of exclusive admiralty jurisdiction: maritime uniformity. *See Guidry v. Durkin*, 834 F.2d 1465, 1474 (9th Cir. 1987) ("Congress intended by enacting the SIAA and the PVA . . . to assure that a uniform body of national law would emerge thereby. Such can only occur if there exists but a single forum for entertaining and construing such claims."). There is no reason why

Congress would create a standalone type of maritime claim that can be brought in state courts but not "at law" in federal courts.

Nor, relatedly, is there a reason why Congress would wish for DOHSA cases to be heard by state juries, but only federal judges. DOHSA applies to any high seas death case, regardless of the claim's relationship to maritime activity. *Tallentire*, 477 U.S. at 232. Therefore, such claims do "not normally require the expertise that admiralty courts bring to bear." *Id.* The district court's interpretation of DOHSA causes the arbitrary exclusion of such cases from the law side of federal courts. The Court is not constrained to read DOHSA this way, especially given the constitutional implications of doing so. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided and internal inconsistencies in the statute must be dealt with.").

What is more, those concerns become even more acute if future courts adopt the district court's interpretation of DOHSA *and* Boeing's view (not at issue here) that DOHSA cases are independently removable from state courts under 28 U.S.C. § 1441(a). *See* Jt. App. at JA008. Under those combined holdings, defendants could force *all* DOHSA cases into admiralty, away from juries. This Court can preempt this avoidable constitutional dilemma by interpreting DOHSA's "in admiralty" language as permissive, not mandatory when there is an independent jurisdictional basis. *Rogers*, 467 F.2d at 1123–24.

In rejecting this approach, the district court stated that jurisdictional statutes do "'not enlarge the parameters of the substantive remedy upon which a claim is based.'" Jt. App. at JA195 (quoting *Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1066 n.5 (S.D.N.Y. 1988)). This is flawed reasoning. The right to a civil jury trial, though of constitutional proportions, is a procedural, not substantive, right. *See, e.g.*, *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("[F]ederal procedural law controls the question of whether

there is a right to a jury trial.")  DOHSA, because it allows actions in admiralty *and* at law is silent on the jury question, which is controlled by the forum's procedural law. *Id.* The source of that law must be relevant to the jury question. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360 (1962) ("This suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury.").

DOHSA permits actions "at law" in federal courts where there is an independent basis for federal subject matter jurisdiction. Because Appellants wish to proceed at law in the district court, this Court must preserve their Seventh Amendment right to a trial by jury, "inviolate." U.S. CONST. amend. VII; Fed. R. Civ. P. 38(a).

## CONCLUSION

For the foregoing reasons, *amicus curiae*, AAJ respectfully urges this Court to reverse the district court's decision and preserve Appellants' Seventh Amendment right to trial by jury.

Dated: August 28, 2023

Respectfully submitted,

/s/ *Jeffrey R. White*

JEFFREY R. WHITE
*Counsel of Record*
SEAN DOMNICK
AMERICAN ASSOCIATION FOR JUSTICE
777 6th Street NW, #200
Washington, DC 20001
(202) 617-5620
jeffrey.white@justice.org

KEVIN MAHONEY
KREINDLER & KREINDLER LLP
485 Lexington Ave.
New York, NY 10017
(212) 687-8181
kmahoney@kreindler.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29 because it contains 4,636 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) and Circuit Rule 32 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 12-point Times New Roman type style.

Date:   August 28, 2023

/s/ *Jeffrey R. White*
JEFFREY R. WHITE

## CERTIFICATE OF SERVICE

I, Jeffrey R. White, counsel for amicus curiae and a member of the Bar of this Court, certify that on August 28, 2023, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I also certify that the foregoing document is being served on this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF. All participants in this case are registered CM/ECF users.

Date:   August 28, 2023

/s/ *Jeffrey R. White*
JEFFREY R. WHITE