IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

In re: Lion Air Flight JT 610 Crash

LAURA SMITH, the duly appointed representative and Independent Administrator of the ESTATE OF ANDREA MANFREDI, deceased, *et al.*

Plaintiffs-Appellants,

v.

THE BOEING COMPANY, *et al.*

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Illinois

The Honorable Thomas M. Durkin, Presiding

Consolidated Case Nos. 18 CV 07686, 19 CV 01552 & 19 CV 07091

**AMICUS BRIEF OF LAW PROFESSORS MARTIN DAVIES, ROBERT FORCE, STEVEN F. FRIEDELL, THOMAS GALLIGAN, AND THOMAS J. SCHOENBAUM**

Drew G.A. Peel
RACHLIS DUFF & PEEL, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60603
Phone: 312-275-0337
dpeel@rdaplaw.net
*Counsel for Amici Curiae*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2358 & 23-2359

Short Caption: In re: Lion Air Flight JT 610 Crash

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amici Curiae – Martin Davies, Robert Force, Steven F. Friedell, Thomas Galligan, and Thomas J. Schoenbaum

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Rachlis Duff & Peel, LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Drew G.A. Peel     Date: August 25, 2023

Attorney's Printed Name: Drew G.A. Peel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ✓     **No** ☐

Address: 542 S Dearborn St, Suite 900

Chicago, IL 60605

Phone Number: 312-733-3950     Fax Number: 312-733-3952

E-Mail Address: dpeel@rdaplaw.net

rev. 12/19 AK

# Table of Contents

Table of Authorities ................................................................................. iii

I.     INTEREST OF *AMICI CURIAE* ..................................................... 1

II.    INTRODUCTION ................................................................................ 2

III.   RELEVANT HISTORICAL BACKGROUND ................................. 2

      A.    Federal Admiralty Jurisdiction Is Concurrent ...................... 3

      B.    The Federal Courts Were Unified Through The Adoption Of The Federal Rules Of Civil Procedure .................................... 7

      C.    Some Special Admiralty Procedures In The Unified Federal Courts Remain, Including Rule 9(h) ....................... 9

IV.   SUMMARY OF ARGUMENT ......................................................... 13

V.    ARGUMENT ...................................................................................... 14

      A.    DOHSA Admiralty Jurisdiction Is Concurrent, *Not* Exclusive ................................................................................. 14

      B.    The Saving-To-Suitors Clause Expresses A Congressional Preference For Concurrent Jurisdiction For Admiralty Claims ...................................................................................... 15

      C.    Congress Did Not Create An Exception To Its General Preference For Concurrent Jurisdiction In DOHSA ............ 19

      D.    The Election Of A Non-Admiralty Forum By A DOHSA Plaintiff Determines The Procedures That Will Apply ........ 25

i

E.  The Right To A Jury Trial May Be The Most Important Right That Flows From The Plaintiff's Choice Of Forum .... 27

F.  Saving-Clause Plaintiffs Are Entitled To A Jury, Even If They Assert Only DOHSA Claims ........................................ 31

VI.  CONCLUSION .................................................................. 34

CERTIFICATE OF COMPLIANCE ....................................... 36

# Table of Authorities

*American Dredging Co. v. Miller*,
    510 U.S. 443 (1994)..................................................................28, 29

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Limited,*
    369 U.S. 355 (1962)............................................15-16, 32-33

*Beacon Theatres, Inc. v. Westover,*
    359 U.S. 500 (1959)..................................................................30

*Curcuru v. Rose's Oil Service, Inc.,*
    802 N.E.2d 1032 (Mass. Sup. Ct. 2004)..............................30

*Dooley v. Korean Air Lines Co., Ltd.,*
    524 U.S. 116 (1998)..................................................................31

*Ex parte Green*,
    286 U.S. 437 (1932)..................................................................17

*Fitzgerald v. U.S. Lines Co.,*
    374 U.S. 16 (1963)...............................................................31-32

*Garrett v. Moore-McCormack Co.,*
    317 U.S. 239 (1942)..................................................................25

*Ghotra by Ghotra v. Bandila Shipping, Inc.,*
    113 F.3d 1050 (9th Cir.1997) ...............................................33

*Griffin v. Oceanic Contractors, Inc.,*
    458 U.S. 564 (1982)..................................................................20

*In re Lockheed Martin,*
    503 F.3d 351 (4th Cir. 2007) ................................................33

*Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*,
    704 F.2d 1038 (8th Cir. 1983) ............................................................ 33

*Lewis v. Lewis & Clark Marine, Inc.*,
    531 U.S. 438 (2001) ..................................................................... 28, 30

*Madruga v. Superior Court of State of Cal.*,
    346 U.S. 556 (1954)............................................................................ 16

*Offshore Logistics, Inc., v. Tallentire*,
    477 U.S. 207 (1986)..............................................14-15, 24, 25-26, 31

*Panama R. Co. v. Johnson*,
    264 U.S. 375 (1924)............................................................................ 20

*River Road Hotel Partners, LLC v. Amalgamated Bank*,
    651 F.3d 642 (7th Cir. 2001) .............................................................. 20

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997)............................................................................ 20

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*,
    561 F.3d 1181 (11th Cir. 2009) .......................................................... 19

*The Thomas Barlum*,
    293 U.S. 21 (1934)............................................................................... 17

*United States v. United Continental Tuna Corp.*,
    425 U.S. 164 (1976) ........................................................................... 17

## Federal Statutes and Regulations

U.S. Const. art. III.......................................................................... 4-5, 15

28 U.S.C. §1331................................................................................ 6 n.5

28 U.S.C. §1332................................................................6 n.6

28 U.S.C. §1333......................................................... *passim*

28 U.S.C. §1369................................................................6 n.7

28 U.S.C. §§ 2071–2077 (the "Rules Enabling Act") .........................8 n.8

28 U.S.C. § 2072 (the "Act of June 19, 1934") ...................8 n.8

46 U.S.C. §§ 944-984 (the "Ship Mortgage Act") ....................................17

46 U.S.C. §§30104-05 (the "Jones Act") ...................................................20

46 U.S.C. §§ 30301 *et seq.* ("DOHSA") ............................................ *passim*

46 U.S.C. § 30302................................................................14, 19

46 U.S.C. § 30308(a) ........................................................14, 20

46 U.S.C. § 30903(b) ................................................................31

46 U.S.C. §§ 31101 *et seq* (the "Public Vessels Act").........................16, 17

52 Cong. Rec. 1065 (Jan. 6, 1915) .................................................22 n.13

Federal Judiciary Act of 1789 .................................................5

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 1 .........................................................9, 9 n.9

Fed. R. Civ. P. 9(h).................................................9, 11, 12, 13, 26, 27-28

Fed. R. Civ. P. 14(c) ....................................................... 10, 11, 26

Fed. R. Civ. P. 38(a).................................................... 13, 26, 28

Fed. R. Civ. P. 38(e) ....................................................... 10, 11, 26

Fed. R. Civ. P. 81 ................................................................. 9 n.9

Fed. R. Civ. P. 81(a)(1) ..................................................... 9 n.9

Fed. R. Civ. P. 82 ......................................................... 10, 11, 26

Suppl. R. of Fed. R. Civ. P. ("Supplemental Admiralty Rules") ..... 10 n.10

39 F.R.D. 69 (1966) .......................................................... 9, 28

## **Other Authorities**

Charles E. Clark & James Wm. Moore, *A New Federal Civil Procedure*, 44 YALE L. J. 387 (1935) ............................................................ 7

The Honorable John W. deGravelles, *The Application of State Law in a Maritime Case: A Primer on "The Devil's Own Mess*," 15 LOY. MAR. L.J. (Winter 2016) ................................................................ 6, 16, 27

Steven F. Friedell, *Death at Sea and the Right to Jury Trial* (Draft, July 21, 2023) ...................................... 14 n.11, 19, 21, 21 n.12, 22, 23

Grant Gilmore & Charles L. Black, Jr., THE LAW OF ADMIRALTY § 1-13 (2d ed. 1975) .............................................................. 6

Mark Thomas Mahfouz, *Whose Interests Are More Important: Should a Plaintiff's Rule 9(h) Designation "Trump" a Counterclaimant's Right to Jury Trial?*, 27 TUL. MAR. L.J. 277 (2002) ......................................... 18

David W. Robertson, *Book Review: THE LAW OF ADMIRALTY by Grant Gilmore and Charles L. Black*, 1976 WIS. L. REV. 352 (1976) ........ 3 n.3, 9

David W. Robertson, *Admiralty Procedure and Jurisdiction After the 1966 Unification*, 74 Mich. L. Rev. 1627 (1976) ........................ 6, 8, 10, 11

David W. Robertson, *The Applicability of State Law in Maritime Cases*, 21 TULANE MAR. L.J. 81 (1996) .............................................................. 29

David W. Robertson, *Admiralty and Maritime Litigation in State Courts,* 55 LA. L. REV. 685 (1995) ........................................................ 15, 19

Robertson, Friedell, & Sturley, ADMIRALTY AND MARITIME LAW IN THE UNITED STATES 65 (4th ed., 2020) ............................................................ 16

Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW §4:4 (5th ed. 2011) ............................................................................................................ 16

Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 4:2 (6th ed. 2018) .............................................................................. 5, 6, 16, 18, 19

Steven L. Snell, COURTS OF ADMIRALTY AND THE COMMON LAW: ORIGINS OF THE AM. EXPERIMENT IN CONCURRENT JURISDICTION (2007) ......... 3, 4, 5

William Howard Taft, *Three Needed Steps of Progress*, 8 A.B.A.J. 34 (1922) .................................................................................................... 7

14A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3672 (4th ed. 2013) ............................................................ 6

Charles Alan Wright, LAW OF FEDERAL COURTS 428 (5th ed. 1994) ......... 8

# I.    INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae* (hereafter, "*Amici*") are law professors who regularly teach and write about admiralty and maritime law.[2]  *Amici* have no stake in the outcome of this case other than their academic interest in the logical and rational development of the law.  Because this case raises a fundamental issue involving admiralty and federal law jurisprudence with important constitutional implications that has generated disagreement among courts, *Amici* believe that their perspective may assist the Court in resolving plaintiffs-appellants' interlocutory appeal from the district court decision, denying their right to a jury trial.

---

[1] *Amici* affirm that no counsel for a party authored this brief in whole or in part.  Part of the cost of the preparation of this brief was paid by Roland Pritzker, an independent philanthropist who has no financial interest in this case but who is concerned with protecting the Seventh Amendment right to a jury trial.  Other than Mr. Pritzker, no person other than *Amici* and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

[2] A full list of the *Amici* and their institutional affiliations is set forth in the Appendix to this brief.

## II.  <u>INTRODUCTION</u>

One of the issues in these consolidated appeals is whether plaintiffs in a wrongful-death action under the Death on the High Seas Act ("DOHSA"), codified as amended at 46 U.S.C. §§ 30301 *et seq.*, can preserve the right to a jury trial (i) by filing their claim in federal court pursuant to a non-admiralty basis for jurisdiction or (ii) by asserting a non-admiralty basis for federal jurisdiction after the case has been removed from state court. Because, as with most maritime claims, DOHSA creates concurrent admiralty jurisdiction, the answer is clearly "yes": the saving-to-suitors clause of 28 U.S.C. §1333(1) preserves a plaintiff's right to choose her forum and the applicable procedural safeguards follow from that choice of forum.

## III.  <u>RELEVANT HISTORICAL BACKGROUND</u>

While the history of admiralty jurisdiction is impossible to distill in a few paragraphs, its general form and outline are briefly addressed here to provide context for the resolution of the narrow issue presented

by these consolidated appeals to which this brief is addressed.[3]

### A. Federal Admiralty Jurisdiction Is Concurrent.

The history of American admiralty law has generally been a story of concurrent jurisdiction. During the Colonial era, the British Crown established separate vice-admiralty courts in the colonies that exercised mostly concurrent jurisdiction over maritime cases with colonial common-law courts. *See* Steven L. Snell, COURTS OF ADMIRALTY AND THE COMMON LAW: ORIGINS OF THE AMERICAN EXPERIMENT IN CONCURRENT JURISDICTION 149-179 (2007) (demonstrating the wide degree of shared jurisdiction over most maritime claims). Under this concurrent jurisdiction, plaintiffs could choose to file a claim in a vice-admiralty court or in a common-law court. One of the most important consequences of this choice was the different processes applicable in each court – in particular the right to a jury trial in the common-law courts. *See id.* at 205 ("Perhaps more importantly, these courts had

---

[3] These basic contours provide a useful outline even though this overview, by necessity, includes many generalizations that do not do justice to the nuanced jurisprudence that a leading scholar characterized as "highly metaphysical, often unnecessarily complex, and intermittently bizarre." David W. Robertson, *Book Review: THE LAW OF ADMIRALTY by Grant Gilmore and Charles L. Black*, 1976 WIS. L. REV. 352, 352 (1976).

provided the litigants with a choice.  A potential plaintiff was able to weigh the alternatives, determining whether the opportunity to cross-examine witnesses in open court and availability of a jury mattered more than the speed of summary civil law procedures....").

After independence, each state established its own admiralty court, initially primarily to adjudicate prize cases.[4] *See id.* at 215-21. State admiralty courts and common-law courts soon shared broadly overlapping jurisdiction over maritime matters other than prize cases. *Id*. The adjudication of prize cases in state admiralty courts, however, led to different and often conflicting substantive law governing prizes and captures, which caused foreign affairs challenges for the young nation. *Id*. at 223-32.

Recognizing a need for uniformity in substantive maritime law, especially as it impacted commerce and foreign affairs, the Founders brought admiralty jurisdiction into the federal courts. *Id*. at 232-71. Thus, the Constitution extends the judicial power of the federal courts "to all Cases of admiralty and maritime jurisdiction."  U.S. Const. art.

---

[4] Prize cases are *in rem* actions involving the resolution of competing claims to vessels and cargo captured during armed conflict.

III, §2. However, when Congress codified federal admiralty jurisdiction in the Judiciary Act of 1789, it included a saving-to-suitors clause expressly creating concurrent jurisdiction over most admiralty claims. The Judiciary Act of 1789 § 9, 1 Stat. 76-77; *see* Snell, *supra*, at 307-312. "The intention of the drafters of the Judiciary Act … was to make clear that admiralty 'suitors' would not be second-class litigants in the United States. Rather admiralty suitors should have full access to common law remedies if they so choose." Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 4:2, at 257 (6th ed. 2018). The current grant of federal admiralty jurisdiction is included in 28 U.S.C. §1333, which states: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors* in all cases all other remedies to which they are otherwise entitled."

This saving-to-suitors clause of §1333 makes clear that a plaintiff who can invoke a federal court's admiralty jurisdiction need not do so if there is another basis for jurisdiction in another court. Under the saving-to-suitors clause, a plaintiff may choose to bring a maritime claim one of three ways: (1) in federal court under the court's admiralty

jurisdiction; (2) in federal court under non-admiralty jurisdiction if the plaintiff can satisfy the requirements of another federal jurisdictional statute such as diversity jurisdiction,[5] federal question jurisdiction,[6] or multiparty/multiforum jurisdiction;[7] (3) or in state court if the state court has jurisdiction. *See* The Honorable John W. deGravelles, *The Application of State Law in a Maritime Case: A Primer on "The Devil's Own Mess,"* 15 LOY. MAR. L.J. 5, 9 (Winter 2016) ("*Primer*"); David W. Robertson, *Admiralty Procedure and Jurisdiction After the 1966 Unification*, 74 Mich. L. Rev. 1627, 1628 (1976) ("*Admiralty Procedure and Jurisdiction*"); *see also*, 14A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3672, at 534-48 & nn.4-11 (4th ed. 2013); Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 4:2, at 257 (6th ed. 2018); Grant Gilmore & Charles L. Black, Jr., THE LAW OF ADMIRALTY § 1-13, at 37 & n.117 (2d ed. 1975).

Maritime cases, including DOHSA cases, filed in state court or in federal court pursuant to non-admiralty jurisdiction are thus commonly referred to as "saving-clause cases."

---

[5] 28 U.S.C. §1332.
[6] 28 U.S.C. §1331.
[7] 28 U.S.C. §1369.

## B. The Federal Courts Were Unified Through The Adoption Of The Federal Rules Of Civil Procedure.

For nearly 150 years, the constitutional grant of federal judicial power was viewed as comprising three conceptually distinct categories of cases: law, equity, and admiralty. Over the years, the Supreme Court periodically issued separate rules of procedure governing equity proceedings and admiralty proceedings, while federal courts generally followed state procedural rules in law cases. *See* Charles E. Clark & James Wm. Moore, *A New Federal Civil Procedure*, 44 YALE L. J. 387, 397-400 (1935). By the early 20th century, leaders among the legal profession began to urge Congress to unify and systematize federal procedure across all types of claims and to eliminate the conceptual distinctions among suits at law, in equity, and in admiralty. *See e.g.*, William Howard Taft, *Three Needed Steps of Progress*, 8 A.B.A.J. 34, 35 (1922) ("We still retain in those courts the distinction between suits at law, suits in equity, and suits in admiralty.... [T]here is no reason why this distinction, so far as actual practice is concerned, should not be wholly abolished, and what are now suits in law, in equity and in admiralty, should not be conducted in the form of one civil action.").

In 1934, Congress responded by authorizing the Supreme Court to issue procedural rules to unify common law and equity procedure.[8] The Court adopted the Federal Rules of Civil Procedure ("FRCP") in 1938. As a result, "law and equity were merged under a single set of simple and effective rules." Charles Alan Wright, LAW OF FEDERAL COURTS 428 (5th ed. 1994).

Although courts of law and equity were unified after 1938, admiralty courts remained conceptually distinct. Federal district courts functioned under one set of procedural rules when exercising admiralty jurisdiction and under another when exercising non-admiralty jurisdiction (*e.g.*, federal question, diversity, or other jurisdiction). Thus, it was customary to visualize a bifurcated federal district court, having both an "admiralty side" and a "civil" or "law" side. David W. Robertson, *Admiralty Procedure and Jurisdiction*, 74 Mich. L. Rev. at 1630.

This conceptual distinction was eliminated in 1966, when the Federal Rules of Civil Procedure were amended to unify civil and admiralty procedure and dispel the fiction that federal courthouses

---

[8]Congress enacted The Rules Enabling Act in 1934. Act of June 19, 1934, c. 651, 48 Stat. 1064. The present version of the Rules Enabling Act is 28 U.S.C. §§ 2071–2077.

contained different "courts" for admiralty cases. *See* 383 U.S. 1029

(1966); Fed. R. Civ. P. 1, Notes of Advisory Committee on Rules –

1966 Amendment ("Just as the 1938 rules abolished the distinction

between actions at law and suits in equity, this change would abolish

the distinction between civil actions and suits in admiralty."). FRCP 1

now provides that the rules "govern the procedure in all civil actions

and proceedings in the United States district courts . . ."[9] After 1966,

there "is but one federal district court, functioning according to the civil

rules regardless of the basis for invoking its jurisdiction." Robertson,

*Book Review: The Law of Admiralty*, 1976 Wis. L. Rev. at 357.

## C.     Some Special Admiralty Procedures In The Unified Federal Courts Remain, Including Rule 9(h).

Although the 1966 FRCP Amendments sought to unify procedures

among cases in federal court and eliminate the misapprehension that

admiralty courts were conceptually distinct from federal district courts

exercising non-admiralty jurisdiction, it was nonetheless recognized

that admiralty proceedings would benefit from some specialized rules.

---

[9] Fed. R. Civ. P. 1. Rule 81 provides for a few exceptions to this near-universal coverage.  The relevant exception for admiralty purposes is for prize proceedings, which are now governed by separate statutory rules.  *See* FRCP 81(a)(1).

Thus, the unified FRCP contain three rules applicable only to admiralty actions that preserve admiralty's "peculiar form of third-party practice, the nonjury tradition [of admiralty], and admiralty's liberal venue doctrines." David W. Robertson, *Admiralty Procedure and Jurisdiction*, 74 Mich. L. Rev. at 1631; *see* FRCP 14(c) (third-party practice rules for admiralty claims); FRCP 38(e) (general right to a jury trial does not apply to admiralty claims); FRCP 82 (different venue rules for admiralty claims). In addition, the Court promulgated Supplemental Rules A through F of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules") to provide for "what may be called the essential peculiarities of admiralty practice: actions in rem; maritime attachment and garnishment; possessory, petitory, and partition actions; and actions for limitation of liability."[10] David W. Robertson, *Admiralty Procedure and Jurisdiction*, 74 Mich. L. Rev. at 1631.

For some maritime claims, such as *in rem* claims, admiralty jurisdiction will be the only basis for federal jurisdiction. For those

___

[10] *See* Fed. R. Civ. P. Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

claims, the special admiralty rules and procedures apply. But maritime plaintiffs with a claim that *could* be filed in federal court under the court's admiralty jurisdiction often satisfy the requirements for federal jurisdiction on other grounds, such as diversity jurisdiction. Before 1966, when the courts were conceptually distinct, such a plaintiff would simply choose to file the claim in either federal civil court or federal admiralty court. *Id.* at 1628-29. But after 1966, with unified federal rules subject to a few exceptions for admiralty cases, there was a need for a mechanism to determine when the special admiralty rules and procedures would apply. Fed. Rule Civ. P. Rule 9(h) ("Rule 9(h)"), added in the 1966 Amendments, provides that mechanism. Rule 9(h) preserves plaintiffs' discretion to choose whether to proceed under the standard federal rules or the specialized admiralty rules by providing:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

The presumption under Rule 9(h) is that such a dual-jurisdiction

claim will proceed under the standard federal rules as would any other claim in federal district court.  However, a plaintiff with a dual-jurisdiction claim can invoke the specialized admiralty rules and procedures by including a statement in the complaint expressly "designat[ing] the claim as an admiralty or maritime claim." This statement is generally referred to as the "Rule 9(h) declaration."

This brief history brings us to the current structure of American admiralty law. Federal admiralty jurisdiction exists over a broad category of claims.  Pursuant to the saving-to-suitors clause of §1333, federal admiralty jurisdiction is generally concurrent with the jurisdiction of other courts of competent jurisdiction, and maritime plaintiffs are entitled to choose their forum. Federal courts sit as one unified court hearing law, equity, and admiralty cases under a unified set of federal rules, with a few specialized admiralty rules and procedures. In cases for which a maritime plaintiff's sole basis for federal jurisdiction is admiralty, the specialized admiralty rules and procedures apply. In cases in which a plaintiff can invoke a federal court's jurisdiction under admiralty *and* another jurisdictional statute, the plaintiff has a choice whether to proceed at law under the general

federal rules or make a Rule 9(h) declaration and proceed in admiralty under the specialized rules.

## IV.   <u>SUMMARY OF ARGUMENT</u>

One issue in these consolidated appeals is whether a DOHSA plaintiff may preserve the right to a jury trial by filing a claim on the law side of federal court, invoking a non-admiralty basis for jurisdiction. Because admiralty jurisdiction under DOHSA is concurrent, not exclusive, the answer is "yes." Congress expressed a clear preference for concurrent admiralty jurisdiction over most maritime claims in the saving-to-suitors clause of 28 U.S.C. §1333(1).  The plain text of DOHSA and its legislative history demonstrate Congress's intent to adhere to this preference and create concurrent jurisdiction under DOHSA.  Rule 9(h) provides the mechanism by which a maritime plaintiff elects the applicable procedures when filing a DOHSA claim in federal court under concurrent jurisdiction.  By *not* filing a Rule 9(h) declaration, plaintiffs-appellants in this case elected to proceed on the law side of federal court under the general Federal Rules of Civil Procedure. Among the most important of those rules is Rule 38(a), guaranteeing the right to a trial by jury.

# V.   ARGUMENT

## A.   DOHSA Admiralty Jurisdiction Is Concurrent, *Not* Exclusive.

Congress enacted DOHSA to create a federal wrongful-death action for certain survivors of persons whose death was caused by "wrongful act, neglect, or default occurring on the high seas." 46 U.S.C. § 30302.  Prior to DOHSA's enactment, there had been considerable confusion in the courts about whether general maritime law recognized an action for a death at sea. DOHSA's enactment settled that issue by creating a statutory cause of action.[11] In addition to creating a cause of action for wrongful death at sea, DOHSA contains a saving clause that provides "[t]his chapter does not affect the law of a State regulating the right to recover for death." 46 U.S.C. § 30308(a). The Supreme Court has held that this saving clause is a jurisdictional saving clause with the same effect as the saving-to-suitors clause in 28 U.S.C. §1333. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207,

---

[11] The history of the need for a statute and the enactment of DOHSA is discussed at length in Steven F. Friedell, *Death at Sea and the Right to Jury Trial* (Draft, July 21, 2023) ("*Death at Sea*"). Available at SSRN: https://ssrn.com/abstract=4506091.

221-25 (1986) ("*Tallentire*"). Pursuant to the general jurisdictional saving-to-suitors clause of §1333 and the plain language and statutory history of DOHSA, federal admiralty jurisdiction under DOHSA is concurrent, not exclusive.

### B. The Saving-To-Suitors Clause Expresses A Congressional Preference For Concurrent Jurisdiction For Admiralty Claims.

"Most admiralty cases . . . are cases of concurrent jurisdiction rather than exclusive jurisdiction."  David W. Robertson, *Admiralty and Maritime Litigation in State Court*, 55 LA. L. REV. 685, 699 (1995).  As noted above, the Constitution extends the judicial power of the federal courts "to all Cases of admiralty and maritime jurisdiction."  U.S. Const. art. III, §2.  Since 1789, Congress has given federal courts "original" and "exclusive" jurisdiction over all cases of "admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. §1333(1) (emphasis added). This saving-to-suitors clause preserves a plaintiff's right to bring a maritime action in any court of competent jurisdiction. *See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Limited,* 369 U.S. 355, 359-60 (1962) ("*Ellerman*") ("Where the suit is *in personam*, it may be brought

either in admiralty or, under the saving clause, in an appropriate non-maritime court by ordinary civil action.") (emphasis added; internal quotation and citation omitted); *cf. Madruga v. Superior Court of State of Cal.*, 346 U.S. 556, 560-61 (1954).

Given this broad congressional preference for concurrent admiralty jurisdiction, only four statutes have been interpreted to create exclusive admiralty jurisdiction in federal courts. *See* Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW §4:4, pp. 239-40 (5th ed. 2011); *see also Thomas J. Schoenbaum*, ADMIRALTY AND MARITIME LAW §4:2, pp. 258-59 (6th ed. 2018); Robertson, Friedell, & Sturley, ADMIRALTY AND MARITIME LAW IN THE UNITED STATES 65 (4th ed., 2020); The Honorable John W. deGravelles, *Primer* at 8-9. ("Congress, by statute, has conferred exclusive admiralty jurisdiction upon the federal courts in suits under the Limitation of Shipowners' Liability Act, the Ship Mortgage Act, the Suits in Admiralty Act, and the Public Vessels Act, and for actions to foreclose preferred ship mortgages.") (citations omitted). These statutes involve matters that are distinctively within the special expertise of admiralty courts – in particular, *in rem* actions against vessels and other maritime property

and the waiver of sovereign immunity in matters involving public vessels and the public weal – such that exclusive admiralty jurisdiction vested in federal courts is warranted.

When Congress creates exclusive admiralty jurisdiction, as it did in these four statutes, only a federal court has jurisdiction to resolve a claim under that statute. *See, e.g.*, *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 172 (1976) ("Both the Suits in Admiralty Act and the Public Vessels Act authorized suits on the admiralty side of the district courts, and were viewed as providing the exclusive remedy for claims within their coverage."); *The Thomas Barlum*, 293 U.S. 21, 42 (1934) ("[T]he jurisdiction granted to the admiralty by the Ship Mortgage Act [subsequently recodified in the Commercial Instruments and Maritime Liens Act] is exclusive. If a mortgage is within the Act, there can be no suit to foreclose it in a state court."); *Ex parte Green*, 286 U.S. 437, 439-440 (1932) (noting that a "state court has no jurisdiction to determine the question of the owner's right to a limited liability" under the Limitation Act).

Pursuant to the saving-to-suitors clause in § 1333, however, admiralty courts share concurrent jurisdiction with other courts of

competent jurisdiction for the vast majority of maritime actions –

actions that are *in personam* rather than *in rem*, and actions that do not

involve suits against public vessels or suits against the sovereign. *See*

*Thomas J. Schoenbaum*, ADMIRALTY AND MARITIME LAW §4:2, pp. 257-58

(6th ed. 2018) ("Thus, the saving to suitors clause institutes concurrent

federal-state jurisdiction over *in personam* admiralty actions, so that an

admiralty plaintiff in an *in personam* claim may choose between filing

an ordinary civil action or bringing a 'libel' action in admiralty.")

(citation omitted). The express preservation of concurrent jurisdiction

reflects Congress's intent to permit a maritime plaintiff "to bring his

claim in any competent forum he chooses, provided that the forum is

authorized to enforce the right conferred by maritime law." Mark

Thomas Mahfouz, *Whose Interests Are More Important: Should a*

*Plaintiff's Rule 9(h) Designation "Trump" a Counterclaimant's Right to*

*Jury Trial?*, 27 TUL. MAR. L.J. 277, 280 (2002).

Under the saving-to-suitors clause, a plaintiff in a maritime case

has three options of where to file the claim: (1) in federal court, under

admiralty jurisdiction; (2) in a state court, with jurisdiction over the

claim; or (3) on the "law side" of federal court, if the plaintiff can

establish federal jurisdiction on some basis other than admiralty. *See* David W. Robertson, *Admiralty and Maritime Litigation in State Courts,* 55 LA. L. REV. at 699 (noting that the saving-to-suitors clause gives "the plaintiff in most types of admiralty or maritime cases" these options); s*ee, also*, *Thomas J. Schoenbaum*, ADMIRALTY AND MARITIME LAW §4:2, p. 257 (6th ed. 2018); Steven F. Friedell, *Death at Sea* at 2-3; *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1187 n.13 (11th Cir. 2009)).

### C. Congress Did Not Create An Exception To Its General Preference For Concurrent Jurisdiction In DOHSA.

The plain language of DOHSA demonstrates Congress's intent that admiralty jurisdiction over DOHSA claims be concurrent, not exclusive. DOHSA provides that "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas[,] ... the personal representative of the decedent **_may_** bring a civil action in admiralty against the person or vessel responsible." 46 U.S.C. § 30302 (emphasis added). By using the word "may" rather than "must," Congress signaled its intent to permit maritime plaintiffs to bring their DOHSA claims as admiralty actions or as *in personam*

actions in courts of competent jurisdiction. *Cf. Panama R. Co. v. Johnson*, 264 U.S. 375 (1924) ("*Panama R. Co.*") (holding that permissive language "may, at his election, maintain an action for damages at law," in the Jones Act, 46 U.S.C. §§30104-05, created concurrent jurisdiction, allowing Jones Act plaintiffs to proceed in either law or admiralty). That DOHSA creates a permissive right to proceed in admiralty, not a compulsory obligation to do so, is reinforced by the inclusion of a saving clause that provides, "[t]his chapter does not affect the law of a State regulating the right to recover for death." 46 U.S.C. § 30308(a). The Supreme Court has explained that "[t]he plain meaning of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In addition, when Congress has chosen words that are either ambiguous or at odds with the statute's stated purpose, courts must construe those words to support that purpose, not defeat it. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982); *see also River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2001) (noting that when interpreting statutory

language, courts should consider the whole statutory text, not just phrases in isolation). DOHSA contains a permissive clause creating admiralty jurisdiction and a saving clause preserving claimant's rights to pursue other remedies. Together these clauses indicate that Congress intended to preserve concurrent jurisdiction over DOHSA claims. At the very least, a fair reading of these clauses refutes any contention that Congress intended to override the general presumption of concurrent admiralty jurisdiction codified in the saving-to-suitors clause (28 U.S.C. § 1333) when enacting DOHSA.

The statutory and legislative history supports this plain reading of DOHSA.[12] It took many attempts, over 20 years, for Congress to enact DOHSA and thereby provide a remedy for wrongful death on the high seas. The first bill was introduced by Congressman Boutell in 1900. It "would have allowed suit to recover for wrongful death with a right of jury trial in both the district courts in admiralty and the federal circuit courts." Steven F. Friedell, *Death at Sea* at 8. The Maritime Law Association ("MLA") objected to the use of jury trials in admiralty and

---

[12] This discussion of statutory and legislative history draws heavily from Steven F. Friedell, *Death at Sea*, *supra* n.10.

the bill failed. *Id.* The next bill to gain traction was drafted by the MLA and introduced in 1913. This bill would have created exclusive admiralty jurisdiction by providing that suits "shall not be maintained in the courts of any State or Territory or in the court of the United States other than in admiralty." *Id.* at 8-9. This attempt to create exclusive admiralty jurisdiction also failed. In 1915, the Judiciary Committee presented a bill to the House that reversed course and expressly preserved concurrent jurisdiction with a saving clause that was very similar to the current one.[13] The Judiciary Committee Chair explained that for deaths resulting from wrongful acts on the high seas, the saving clause gave plaintiffs the option of (i) suing in federal court based on either admiralty or diversity or (ii) suing in state court where the case might remain or be tried in federal court if removed. A non-jury trial would be mandated only if (i) the plaintiff elected to sue in admiralty or (ii) it was an *in rem* proceeding. *Id.* at 9. Although there were proposed amendments to this saving clause, and the MLA weighed

---

[13] The proposed saving clause read, "But nothing in this Act shall be construed to abridge the right to sue and pursue any remedy given by the laws of any State or Territory in such cases." 52 Cong. Rec. 1065 (Jan. 6, 1915).

in with proposed wording of its own, none of these proposals objected to the creation of concurrent jurisdiction – or the use of jury trials in non-admiralty courts. *Id.* at 9. This bill also failed.

The bill that would eventually become DOHSA was introduced a few months later, after the MLA changed course dramatically and proposed a bill that would provide a remedy only for deaths outside state waters and "limit its application to the Admiralty Court." *Id.* at 11. The saving provision in this proposed bill read, "That the provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this Act as to causes of action accruing within the territorial limits of any State." Steven F. Friedell, *Death at Sea* at 11. The idea, apparently, was to limit the scope of the saving clause to those wrongful deaths occurring in state territorial waters. This bill was introduced in 1915, but languished in Congress during the First World War. *Id.*

Congress returned its attention to the bill after the war, and, with very little additional debate, DOHSA was enacted in 1920. Shortly before enacting the legislation, however, Congress made a crucial amendment to the saving clause, striking the phrase "as to causes of

action accruing within the territorial limits of any State." *Id.* The saving

clause in the enacted statute thus read: "That the provisions of any

State statute giving or regulating rights of action or remedies for death

shall not be affected by this Act." *Id.* Congressman Mann, who

introduced the successful amendment, argued that the amended bill

"would not interfere in any way with rights now granted by any State

statute, whether the cause of action accrued within the territorial limits

of the State or not.  In other words, if a man had cause of action and

could get service, he could sue in a State court and not be required to

bring suit in the Federal court." *Id.* at 12.

    To be sure, the statutory and legislative history of DOHSA is

murky in some respects. *See Tallentire*, 477 U.S. at 225 (recognizing

that "the congressional debates … were exceedingly confused and often

ill informed"). But the Supreme Court examined this history in close

detail and expressly held that DOHSA's saving clause was intended to

"serve as a jurisdictional saving clause, ensuring that state courts

enjoyed the right to entertain causes of action and provide wrongful

death remedies both for accidents arising on territorial waters and,

under DOHSA, for accidents occurring more than one marine league

from shore." *Tallentire*, 477 U.S. at 207. If this saving clause preserves concurrent state court jurisdiction, then Congress did not create exclusive admiralty jurisdiction over DOHSA cases. When admiralty jurisdiction is not exclusive, maritime plaintiffs have all the options available to them under the saving-to-suitors clause, including filing their claim in federal court under a non-admiralty grant of jurisdiction and proceeding under the general FRCP, or having had their claim removed to federal court, invoking a non-admiralty grant of jurisdiction and proceeding under the general FRCP.

## D. The Election Of A Non-Admiralty Forum By A DOHSA Plaintiff Determines The Procedures That Will Apply.

Non-admiralty courts hearing saving-to-suitors-clause cases must apply the same substantive law that admiralty courts would apply. *See Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 243 (1942). Thus, all DOHSA claims, wherever they are filed, are resolved under the substantive law of DOHSA. *Tallentire* made this point clear with respect to DOHSA:

> Stated another way, the "saving to suitors" clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-

called "reverse-Erie" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.

*Tallentire*, 447 U.S. 222-23.

However, because DOHSA creates concurrent jurisdiction, under the saving-to-suitors clause a DOHSA plaintiff may choose the forum in which to pursue the claim and thereby select the procedures that will apply. As in *Tallentire*, a plaintiff may file a DOHSA claim in a state court with jurisdiction, in which case state procedural rules apply. Or a plaintiff may file the DOHSA action in federal court. The federal court will have admiralty jurisdiction over the claim, but if the plaintiff satisfies the requirements of a non-admiralty jurisdictional statute, Rule 9(h) permits the plaintiff to elect which procedures – law or admiralty – will apply to the claim. If the plaintiff files a Rule 9(h) declaration, the special admiralty procedures found in Rules 14(c), 38(e), 82, and the Supplemental Rules will apply to the DOHSA claim. In contrast, if the plaintiff does not file a Rule 9(h) declaration and a non-admiralty basis for federal jurisdiction exists, the claim will proceed at law and the ordinary Federal Rules of Civil Procedure will apply—including Rule 38(a), which preserves the right to a jury trial.

As respected maritime expert Judge John deGravelles states:

> What is "saved" to the suitor in § 1333 is not only the right
> to bring most maritime cases in a non-admiralty or "savings
> clause court" (state court or the law side of federal court),
> but also the right of the litigants to utilize the procedural
> differences between the federal court in admiralty and those
> of the non-admiralty or savings clause court. In other words,
> each of the three courts should apply its own procedural
> rules regardless of what substantive law is applied.

deGravelles, *Primer*, 15 LOY. MAR. L.J. at 9 (citation omitted).

### E. The Right To A Jury Trial May Be The Most Important Right That Flows From The Plaintiff's Choice Of Forum.

The right to a trial by jury is a procedural right determined by a plaintiff's choice of forum, not a substantive right preempted by DOHSA. The Advisory Committee's Notes to Rule 9(h) make clear that a primary purpose of the Rule 9(h) declaration is to "provide some device for preserving the [pre-merger] power of the pleader to determine" whether admiralty or civil law procedures will apply to his or her claim and thereby preserve the right to a jury trial if desired. The Note further provides:

> Many claims, however, are cognizable by the district courts
> whether asserted in admiralty or in a civil action, assuming
> the existence of a nonmaritime ground of jurisdiction. Thus
> at present the pleader has (the) power to determine

procedural consequences by the way in which he exercises the classic privilege given by the saving-to-suitors clause (28 U.S.C. §1333) or by equivalent statutory provisions.... One of the important procedural consequences is that in the civil action either party may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute....

Fed. R. Civ. P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75–76 (1966). In addition, FRCP 38(a) emphasizes the importance of the jury-trial right in a federal civil action by providing that "[t]he right of trial by jury as declared by the Seventh Amendment to the constitution – or as provided by federal statute – is preserved to the parties inviolate."

As the Supreme Court noted in *American Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) ("*American Dredging*"), "[i]n exercising in personam jurisdiction ...  a state court may adopt such remedies, and ... attach to them such incidents, as it sees fit so long as it does not attempt to make changes in the substantive maritime law." In *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001) ("*Lewis v. Lewis & Clark*"), the Court explained that "[a] right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." The *American Dredging* Court explained that a saving-clause court's remedy is procedural, not substantive, as long as it

does not "work[] material prejudice to the characteristic features of the general maritime law or interfere[] with the proper harmony and uniformity of that law in its international and interstate relations." 510 U.S. at 447 (internal citations and quotations omitted).

The *American Dredging* Court emphasized that "[u]niformity of process (beyond the rudimentary elements of procedural fairness) is assuredly not what the law of admiralty seeks to achieve, since it is supposed to apply in all the courts of the world." 510 U.S. at 453. The late Professor David Robertson characterized procedural rules as "those whose official purposes are confined to securing the fairness or efficiency of the litigation process." David W. Robertson, *The Applicability of State Law in Maritime Cases*, 21 TULANE MAR. L.J. 81, 85 (1996); *see also American Dredging,* 510 U.S. at 458 (Souter, J., concurring) ("[H]ow a given rule is characterized for purposes of determining whether federal maritime law pre-empts state law will turn on whether the state rule unduly interferes with the federal interest in maintaining the free flow of maritime commerce."). The right to a jury trial is quintessentially a rule of fairness; it neither disrupts the free flow of maritime commerce, nor does it interfere with

the harmony or uniformity of admiralty law.  It clearly falls on the procedural side of the substance/procedure divide.  *See Lewis v. Lewis & Clark*, 531 U.S. at 454-55 ("[T]he [saving-to-suitors] clause extends to all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. Trial by jury is an obvious, but not exclusive, example of the remedies available to suitors.") (internal quotations and citations omitted); *see also Curcuru v. Rose's Oil Service, Inc.*, 802 N.E.2d 1032, 1038 (Mass. Sup. Ct. 2004) ("Use of the remedy of a jury trial does not undermine or conflict with DOHSA or with substantive Federal maritime law.").

There is no reason to believe that Congress intended to limit the applicability of the Seventh Amendment right to a trial by jury when it enacted DOHSA.  As the Supreme Court stated in *Beacon Theatres, Inc. v. Westover*, "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." 359 U.S. 500, 501 (1959) (internal quotation omitted).  When Congress has intended to abrogate the right to a jury trial in an admiralty action, it has done so directly

and expressly.  *See, e.g.*, 46 U.S.C. § 30903(b) ("A claim against the United States or a federally-owned corporation under this section shall be tried without a jury.").

**F.    Saving-Clause Plaintiffs Are Entitled To A Jury, Even If They Assert Only DOHSA Claims.**

Maritime plaintiffs in saving-clause cases at law are entitled to a jury trial, regardless whether they also are asserting non-DOHSA claims.  When DOHSA applies, it preempts other forms of wrongful-death claims. *See Dooley v. Korean Air Lines Co., Ltd.,* 524 U.S. 116, 123 (1998); *Tallentire*, 477 U.S. at 227.  But DOHSA preemption is substantive, not procedural.  And DOHSA § 7 and 28 U.S.C. § 1333 permit DOHSA plaintiffs to elect the procedures that will apply to their DOHSA claim by electing the forum in which they bring it. As *Tallentire* explained: "Although not intended to function as a substantive law saving clause, [DOHSA] § 7 incidentally ensured that state courts exercising concurrent jurisdiction could, as under the 'saving to suitors' clause, apply such state remedies as are not inconsistent with substantive federal law." 477 U.S. at 224.

Jury trials are not antithetical to the resolution of substantive maritime claims.  "While ... the Seventh Amendment does not require

31

jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress, or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963). Maritime law is a complicated amalgam of statutory and common law rights that apply to different actors in different circumstances. But the saving-to-suitors clause in 28 U.S.C. §1333 is a constant. And in applying the saving-to-suitors clause in other maritime contexts, the Supreme Court has made clear that it permits maritime plaintiffs to choose their forum and thereby preserve all the procedural remedies available in the chosen forum—including the right to a jury trial.

In *Ellerman*, for example, the Court held that a plaintiff who brings a maritime claim as an *in personam* claim at law is entitled to a jury trial on that claim. 369 U.S. at 359-60 (1962) ("[A] suit for breach of a maritime contract, while it may be brought in admiralty, may also be pursued in an ordinary civil action, since ... it is a suit in personam. ... This suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury. ... [T]rial by jury is part of the remedy."). *Ellerman* makes clear that the Seventh

Amendment applies to claims that could be heard in admiralty if a plaintiff elects to proceed at law under the saving-to-suitors clause instead. Lower courts also agree. *See In re Lockheed Martin*, 503 F.3d 351, 356 (4th Cir. 2007) ("*Ellerman* makes it clear that the Seventh Amendment applies to admiralty claims that are tried 'at law' by way of the saving-to-suitors clause."); *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1054 (9th Cir.1997) ("The difference between [proceeding in admiralty or at law] is mostly procedural; of greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims based in diversity or brought in state court."); *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1041 (8th Cir. 1983) ( "An admiralty claim that is also cognizable as a civil claim, however, may be brought as an ordinary civil action. In these cases, the right to trial by jury attaches."). The stevedoring contract in *Ellerman* raised a basic contract issue suitable for resolution by a jury. Similarly, most DOHSA claims raise basic tort issues for which there is no particular federal maritime interest and no warrant to insist on the specialized procedures of admiralty jurisdiction—especially the denial of the jury-

trial right.

## VI.  CONCLUSION

DOHSA creates a classic tort action for wrongful death on the high seas.  While a DOHSA claim may be brought in federal court under that court's admiralty jurisdiction, the saving-to-suitors clause (28 U.S.C. § 1333) and DOHSA make clear that the claim also may be brought in any other court of competent jurisdiction.  When a plaintiff chooses a forum other than a federal court exercising admiralty jurisdiction, the procedures applicable in that chosen forum apply to the claim.  In this case, in which the DOHSA claims are presented in federal court under diversity jurisdiction, the right to a trial by jury is the most important procedural right that flows from the plaintiffs-appellants choice of that forum.

Respectfully submitted,

*/s/ Drew G.A. Peel*
Drew G.A. Peel (ARDC # 620973)
Rachlis Duff & Peel, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60603
(312) 275-0337 (dir.)
(312) 733-3952 (fax)
dpeel@rdaplaw.net
*Counsel for Amici Curiae*

*Contributing Counsel for Amici Curiae*

James P. Jacobsen
Nigel T. Stacey
Joseph S. Stacey
Stacey & Jacobsen, PLLC
4039 21st Ave W, Suite 401
Seattle, WA 98199
206-282-3100
jjacobsen@maritimelawyer.us
nstacey@maritimelawyer.us
jstacey@maritimelawyer.us

Preston Easley
Law Offices of Preston Easley APC
2500 Via Cabrillo Marina, Ste. 106
San Pedro, CA 90731
310-832-5315
maritime@earthlink.net

Charles D. Naylor
Law Offices of Charles D. Naylor
111 W. Ocean Blvd, Ste. 400
Long Beach, CA 90802
310-514-1200, Ext. 101
CNaylor@Naylorlaw.com

Lynn E. Blais
3215 Fairfax Walk
Austin, TX 78705
512-653-5987
lblais@law.utexas.edu

Timothy A. Loranger
Wisner Baum, LLP
11111 Santa Monica Blvd.
Ste. 1750
Los Angeles, CA 90025
310-207-3233
tloranger@wisnerbaum.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,851 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font for the main text and footnotes.

Dated: August 25, 2023

By: */s/ Drew G.A. Peel*

Nos. 23-2358 & 23-2359

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

In re: Lion Air Flight JT 610 Crash

LAURA SMITH, the duly appointed representative and Independent
Administrator of the ESTATE OF ANDREA MANFREDI, deceased,
*et al.*

Plaintiffs-Appellants,

v.

THE BOEING COMPANY, *et al.*

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Illinois

The Honorable Thomas M. Durkin, Presiding

Consolidated Case Nos. 18 CV 07686, 19 CV 01552 & 19 CV 07091

**APPENDIX TO AMICUS BRIEF OF LAW PROFESSORS
MARTIN DAVIES, ROBERT FORCE, STEVEN F. FRIEDELL,
THOMAS GALLIGAN, AND THOMAS J. SCHOENBAUM**

Drew G.A. Peel
RACHLIS DUFF & PEEL, LLC
542 South Dearborn Street, Suite 900
Chicago, IL 60603
Phone: 312-275-0337
dpeel@rdaplaw.net
*Counsel for Amici Curiae*

# Appendix

## Table of Contents

List and Short Bios of *Amici Curiae*                    A.01-A.03

*APPENDIX*

***List and Short Bios of** Amici Curiae*

***(Titles and institutional affiliations are provided for identification purposes only)***


**Professor Martin Davies** is the Admiralty Law Institute Professor of Maritime Law at Tulane University and Director of the university's Maritime Law Center.  He is the current chair of the Association of American Law Schools (AALS) Section on Maritime Law.  He is author or co-author of books on shipping law, international trade law, conflict of laws, and the law of torts.  Professor Davies's publications include *Shipping Law* (with Anthony Dickey), now in its fourth edition; *Admiralty and Maritime Law: Practitioner's Edition* (with Robert Force and the late A.N. Yiannopoulos), now in its third edition; and *Torts* (with Ian Malkin), now in its ninth edition.

**Professor Robert Force** holds the Niels F. Johnsen Chair of Maritime Law at Tulane University and is Director Emeritus of the university's Maritime Law Center.  Professor Force's publications include *The Law of Seamen* (with the late Martin J. Norris), now in its fifth edition; *The Law of Maritime Personal Injuries* (with the late Martin J. Norris), now in its fifth edition; and *Admiralty and Maritime Law: Practitioner's Edition* (with Martin Davies and the late A.N. Yiannopoulos), now in its third edition.  He also prepared a monograph on Admiralty and Maritime Law for federal judges at the invitation of the Federal Judicial Center.

**Professor Steven F. Friedell** has been on the faculty of the Rutgers University School of Law since 1977.  He teaches courses on, and has written widely on, admiralty, torts, and Jewish law.  In 1996 he served as chair of the AALS Section on Maritime Law and was on the executive committee from 1997-2001.  Professor Friedell is a member of the American Law Institute.

Professor Friedell's publications include volume 1 of *Benedict on Admiralty* (Jurisdiction) and *Admiralty and Maritime Law in the United States* (with the late David W. Robertson and Michael F. Sturley), now in its fourth edition.

**Professor Thomas Galligan** has worked in higher education since 1986 as a professor, dean, and college president. Galligan is a Professor of Law at LSU's Paul M. Hebert law Center where he holds the Dodson & Hooks Endowed Chair in Maritime Law and the James Huntington and Patricia Kleinpeter Odom Professorship. From January 1, 2020-July 5, 2021, Galligan served as LSU President (originally, he was named Interim President but the Board of Supervisors later retroactively removed the interim title). From 2016-19, Galligan was the Dean of LSU's Paul M. Hebert Law Center. From 2006 to 2016, Galligan served as the President of Colby-Sawyer College, a private liberal arts based college in New London, New Hampshire. Galligan served as Dean of the University of Tennessee's College of Law from 1998 to 2010. He started his academic career at LSU in 1986 as a Professor of Law. Professor Galligan has extensively taught, written about, and spoken on admiralty and torts. His work has been cited and relied upon by the Supreme Court, lower federal courts, state courts, the Restatement (Third) of Torts, and commentators. Professor Galligan testified on maritime law issues before three congressional committees in the wake of the Deepwater Horizon disaster in the Gulf of Mexico. He is co-author of *Admiralty in a Nutshell*, now in its eight edition and *Cases and Materials on Maritime Law* now in its fourth edition.

**Professor Thomas J. Schoenbaum** is a professor at University of Washington and Fellow of Georgetown University in Washington DC. He holds a Juris Doctor degree (with distinction) from the University of Michigan and a PhD from the University or Cambridge (UK), Gonville &

Caius College. He served as the founding executive director of the Tulane Maritime Law Center, 1980-83, and as Executive Director of the Dean Rusk Center for International Law, University of Georgia. He held the Dean Rusk Chair of International Law at Georgia for twenty years. He actively practices maritime law and is the author of the leading American treatise, *Admiralty and Maritime Law*, now in its 6th edition, published by Thomson Reuters. He is also the author of *Admiralty and Maritime Law*, a Hornbook published by West Publishing Co.